# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERINA MAY MENGES, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:16-cv-01766-BAM <br><br> **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Terina May Menges ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

1

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

On October 4, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income. AR 216-21, 222-25.[2] Plaintiff alleged that she became disabled due detached retina-legally blind in right eye/clinically blind in left eye, asthma, dizziness, migraine headaches, floating objects in eyes and blinding reflections in eyes, hypoglycemia, sensitive skin and disoriented and combative. AR 149, 314. Plaintiff's applications were denied initially and on reconsideration. AR 139-42, 143-46, 149-53, 155-60. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Christine Hilleren held a hearing on May 4, 2015, and issued an order denying benefits on August 20, 2015. AR 9-22, 29-72. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5, 8. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on May 4, 2015, in Fresno, California. Plaintiff appeared with her attorney Jonathan Pena. Impartial Vocational Expert ("VE") Stephen Schmidt also appeared. AR 31.

In response to questioning from the ALJ, Plaintiff testified that she was 45 years old and living with her 26-year-old daughter and her grandkids. She cannot drive and lost her license in 2006 or 2007. She now walks and does not use public transportation. AR 37-40.

Plaintiff testified that she finished the 11th grade. She worked briefly for Augies Farm Labor Services in 2009 and 2010 driving a tractor. She worked for one month in 2010, but it was too dangerous because of her vision. AR 41-42. When asked about her other past work, Plaintiff testified that she worked for In-Home Support Services from 2001 to 2007 taking care of three different clients. Her duties included changing bandages, body rubs for circulation, cleaning, cooking and hygiene. In that job, she lifted about 65 or 70 pounds. The job was mostly standing. When asked why she could

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

not work, Plaintiff testified that she cannot see well enough and she is scared to be around people. AR 42-44.

When asked about her vision, Plaintiff testified that she still experiences floaters and gets bright lights flashing in her eyes. She has no vision in her right eye, and it is completely dark. In her left eye, she sees floaters and bright lights every once in a while. She also has headaches every day if she keeps her eyes open very long. Plaintiff reportedly had corrective surgery for the right eye in 2008 or 2009. After the surgery, she could see a little bit, but went totally blind again. Between 2008 and 2012, Plaintiff asked for a referral to an ophthalmologist, but never received one because of an insurance issue. AR 45-49. She does not use an assistive device, and does not need anyone to help her walk. AR 55.

When asked about her anxiety, Plaintiff testified that it has been worsening in the last two years, which she attributes to her inability to see. She does not like riding in cars or being around people. She also experiences depression, feeling hopeless and like she wants to cry. She has not had any treatment for depression, and first felt she needed treatment for anxiety about two months before the hearing. AR 49-52.

When asked about her asthma, Plaintiff testified that she uses an albuterol inhaler, sometimes every day, and certain kinds of sprays bother her. If her anxiety gets bad, she will have an asthma attack, which happened three times in the last month. She takes Myland for anxiety, which seems to help. AR 52-54.

When asked about her past drug and alcohol abuse, Plaintiff testified that she has been sober since 2002, and last used methamphetamine in 2002. AR 54.

When asked about a typical day, Plaintiff testified that she usually spends the day playing with her grandkids, ages 8, 4 and 2. Her daughter does not let her babysit because she cannot see. Plaintiff tries to help with the cooking every night. She will make her bed, but not do any other cleaning because she cannot see well enough. She is able to shower and dress without assistance. She will go shopping with her daughter once a month, but cannot shop for groceries on her own. She will walk on her own to a friend's house about four or five blocks away. AR 55-59.

When asked about her abilities, Plaintiff testified that she could probably lift 50 pounds and possibly walk longer than six blocks. She does not have a problem standing, but cannot sit very long due to poor circulation. She thought she could sit five or ten minutes. AR 59-60.

In response to questions from her attorney, Plaintiff testified that she cannot see screens, monitors or TVs. She has astigmatism that makes the lights blur together, and she is not able to see even if it is close. Sha also has bad depth perception. AR 60, 63.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Stephen Schmidt. The VE identified Plaintiff's past work as home attendant. AR 66-67. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and past work. This individual had no exertional limitations, but could not drive, and would have difficulty reading normal-size print and working with small objects, but would be able to read large print and work with large objects. This individual also would need to avoid exposure to hazards, such as unprotected heights and moving machinery, and would need to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation and other similar pulmonary irritants. The VE testified that this individual could not perform Plaintiff's past work, but there would be other work in the national economy that the individual could perform, such as hand packer, cleaner II, and laborer, stores. AR 67.

For the second hypothetical, the ALJ asked the VE to assume all of the prior limitations, but that the individual's limited depth perception would preclude the individual from making any accurate judgments of distance or speed, and the individual would not be able to perform any duties requiring reading of any kind or manipulation of a computer screen. The individual also would be limited to simple, routine tasks commensurate with a SVP level of 2 or less. The VE testified that the individual could perform the previous jobs of cleaner II and laborer, stores, but not hand packer due to the speed and production required. However, a third position would be packer, machine operator. The VE did not believe there would be any erosion in numbers from the laborer, stores or cleaner II positions. AR 67-68.

For the third hypothetical, the ALJ asked the VE to assume all the prior limitations, but this individual would need to take a break after every 30 minutes of work for five to ten minutes in order to

4

rest the eyes. The VE testified that there would not be any other work in the national economy that the hypothetical individual could perform. AR 68.

Following the ALJ's questioning, Plaintiff's counsel asked the VE to assume an individual with the same factors as the first hypothetical, but this individual was limited to occasional quick near point visual refocus and occasional periphery of a fixed point. AR 69. The VE testified that this hypothetical individual could not perform any of the jobs identified in the first hypothetical or any other work. AR 69.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 9-22. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since December 19, 2008, her amended alleged onset date. AR 14. Further, the ALJ identified right eye cataract and blindness due to history of retinal detachment/lattice degeneration, and left-eye myopia as severe impairments. AR 15-16. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 16-17. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but cannot drive, would have difficulty reading normal-sized print and working with small objects, but would be able to read large print and work with large objects. She also must avoid exposure to hazards, such as unprotected heights and moving machinery that is not stably situated. She also had limited depth perception that would preclude her from making any accurate judgments of distance or speed, and she would not be able to perform any duties requiring reading or manipulation of a computer screen. AR 17-20. With this RFC, the ALJ found that Plaintiff could not perform her past relevant work, but there were other jobs existing in the national economy that she could perform, such as laborer, stores, cleaner II, and packer, machine operator. AR 20-21. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 22.

# SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# **DISCUSSION**[3]

Plaintiff argues that the ALJ's finding at step five of the sequential evaluation is not supported by the evidence, and the jobs identified by the ALJ require abilities that Plaintiff does not possess. Plaintiff also argues that the ALJ failed to provide clear and convincing reasons to reject the opinions of the consultative examiners regarding Plaintiff's mental health limitations.

## I. Step Five of the Sequential Evaluation

Plaintiff challenges the ALJ's step five determination, asserting that the representative jobs identified by the VE conflict with the Dictionary of Occupational Titles ("DOT") and the ALJ's RFC. In relevant part, the VE opined that Plaintiff could perform work as the following: (1) laborer, stores, (2) cleaner II and (3) packer, machine operator. AR 67-68. Plaintiff now argues that the ALJ's RFC precludes work as a laborer, stores and packer, machine operator. (Doc. No. 13 at pp. 4-5.) Plaintiff also argues that she cannot perform the job of cleaner II (DOT 919.-687-014) because the record supports that she cannot work around concentrated exposure to fumes, dusts, gases, etc. (*Id.* at p. 6.)

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a step-five finding that a claimant is not disabled, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § § 404.1520(g), 416.920(g).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1) (DOT is source of reliable job information), 416.966(d)(1) (same). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007). However, failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n. 19.

As indicated, Plaintiff argues that there is an inconsistency between the ALJ's RFC and the DOT job descriptions for the laborer, stores and packer, machine operator positions. However, Plaintiff appears to concede that there is no inconsistency between the ALJ's RFC and the DOT job description for the cleaner II position. Instead, Plaintiff contends that the ALJ's RFC failed to include limitations assessed by the consultative examiner, Dr. Tomas Rios, regarding Plaintiff's reactive airway disease. (Doc. No. 13 at pp. 6-7.)

In relevant part, Dr. Rios opined in April 2013 that Plaintiff "should be limited from working around chemicals, dust/fumes/gases on account of her history of reactive airway disease." AR 46. Plaintiff argues that with these environmental limitations she could not perform the job of cleaner II. (Doc. No. 13 at pp. 6-7.) The issue thus turns on whether the ALJ properly excluded certain environmental limitations from Plaintiff's RFC.

In developing the RFC, an ALJ need only consider limitations that are supported by objective evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. In making his RFC determination, the ALJ took into account those limitations for which there was record support . . . ."). Here, the ALJ expressly considered Plaintiff's ability to work in environments with "concentrated exposure to fumes, odors, dusts, gases, and poor ventilation," but found that no pulmonary limitations were warranted. AR 19. In relevant part, the ALJ determined that Plaintiff's asthma had not been shown to cause more than a minimal limitation in her ability to perform work-related activities and was not severe. AR 15. The ALJ explained that Plaintiff's medical records were devoid of any hospital or emergency room records for asthma attacks and a February 14, 2012 chest x-ray showed only mild bronchitis, not reactive airway disease. AR 15, 396. Additionally, the ALJ noted that Plaintiff's physical examinations showed no problems before the chest x-ray other than some wheezing (AR 397), and subsequent examinations revealed normal breath sounds and lungs clear to auscultation. AR 15, 433 (normal respiratory examination),

8

439 (same), 446 (breath sounds are clear to auscultation bilaterally, no wheezes, rhonchi or crackles). In the absence of objective evidence, the Court finds that the ALJ's decision not to include environmental limitations in Plaintiff's RFC was proper and supported by the record.

Further, the ALJ was not required to credit Dr. Rios' opinion (or the corresponding opinions of the state agency physicians) regarding any pulmonary limitations. In evaluating medical opinion evidence, "the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Moreover, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons." *Id.* at 830-831. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ need not accept the opinion of a physician if that opinion is inadequately supported "by the record as a whole."); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ is not required to accept an opinion of a physician—even a treating physician—if it is conclusory and not supported by clinical findings).

As discussed above, the ALJ determined that the medical evidence of record generally showed no wheezing and clear lungs, there were no emergency visits or hospitalizations for asthma, and diagnostic studies showed no evidence of chronic obstructive pulmonary disease or a chronic hypoxic state. AR 19. Dr. Rios' own evaluation notes include Plaintiff's report that her asthma has been fairly stable in the last two years and that she has not required any hospitalization for acute exacerbation of breathing problems. AR 459. On examination, Dr. Rios found Plaintiff's lungs chest/lungs to be symmetric with normal excursions and clear to auscultation throughout. AR 460. Dr. Rios concluded that Plaintiff's asthma appeared to be stable "without any clinical findings suggestive of chronic obstructive pulmonary disease or chronic hypoxic state." (AR 46. In this instance, the ALJ properly discounted Dr. Rios' opinion because it was not supported by the medical evidence of record (AR 19). *See Hoffschneider v. Berryhill*, No. 16-cv-07383-DMR, 2018 WL 1400433, at *11-12 (N.D. Cal. Mar.

19, 2018) (lack of objective testing or evidence to support physician's limitations was clear and convincing reason to discount that opinion).

Even if the pulmonary limitations were included in the RFC, however, Plaintiff has not demonstrated that she would be precluded from performing the cleaner II position. The DOT describes a cleaner II's duties to include the following tasks:

> Cleans interior of vehicle, using broom, cloth, mop, vacuum cleaner, and whisk broom. Cleans windows with water, cleansing compounds, and cloth or chamois. Replenishes sanitary supplies in vehicle compartments. Removes dust, grease, and oil from exterior surfaces of vehicles, using steam-cleaning equipment, or by spraying or washing vehicles, using spraying equipment, brush or sponge. May polish exterior of vehicle. May fumigate interior of vehicle, using fumigating gases or sprays.

Cleaner II, DICOT 919.687-014, 1991 WL 687897. The DOT further indicates that in this position neither toxic caustic chemicals nor any other environmental or atmospheric conditions are present. Cleaner II, DICOT 919.687-014, 1991 WL 687897. Moreover, the description provides only that the job "may" include polishing the exterior of the vehicle or fumigating the interior of the vehicle, using fumigating gases or sprays. *Id.* The word "may," as used in the DOT, means "duties required of workers in ... some establishments but not others." 1991 WL 645965. There is no indication that this job requires concentrated exposure to fumes, gases and dusts.

More importantly, the hypothetical posed to the VE included a limitation to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation and other similar pulmonary irritants. The VE expressly testified that this individual could perform the job of cleaner II. AR 67-68. A VE's recognized expertise provides the necessary foundation for his or her testimony, and an ALJ may take administrative notice of any reliable job information, including information provided by a VE. *Bayliss*, 427 F.3d at 1218.

As the ALJ properly determined that Plaintiff could perform work as a cleaner II, the ALJ met his burden to prove that Plaintiff can perform other jobs in the national economy. Therefore, any asserted error in identifying the other jobs of laborer, stores and packer, machine operator would be considered harmless. *See Peralez v. Astrue*, No. ED CV 12-00358-VBK, 2013 WL 66944, at *2 (C.D.

Cal. Jan. 3, 2013) (quoting *Carmickle v. Commissioner of Soc. Sec. Admin.* 533 F.3d 1155, 1162 (9th Cir. 2008)).

## II. Mental Impairment

Plaintiff asserts that the ALJ improperly rejected the opinions of the consultative examiners, Drs. Roger A. Izzi and William Prince, regarding her mental health limitations.

<u>Dr. Izzi's Opinion</u>

On May 8, 2012, Dr. Izzi completed a psychiatric evaluation. On mental status examination, Plaintiff was alert, responsive and fully oriented. Her affect was dysphoric and she reported feeling sad. She was able to recall three words without any obvious difficulty and was able to recall two of three words on delayed recall. She had no obvious speech or language problems. There were no gross indications of psychosis or schizophrenia and no apparent loss of contact with reality. Plaintiff's overall performance on the Folstein Mini Mental Status Examination was within the normal range. Dr. Izzi diagnosed her with posttraumatic stress disorder and depressive order, assigned her a Global Assessment of Functioning ("GAF") of 68, and opined that she could perform simple and repetitive tasks, but she would have moderate limitations in her ability to get along with peers or be supervised in a work-like setting. AR 417-20.

In assessing Dr. Izzi's opinion, the ALJ reasoned as follows:

> I give the opinion of Dr. Izzy [sic] little weight [ ]. He assessed the claimant would be moderately limited in her ability to get along with peers or be supervised in a work-like setting due to her mood disorder. However, this finding is inconsistent with his . . . objective findings on mental status examination and his assessed [GAF] Score of 68, which is indicative of mild symptoms or some difficulty with social, occupational, or school functioning, but generally functioning pretty well [ ]. In addition, the claimant had no specialized mental health treatment, psychiatric hospitalizations, or suicidal attempts during the relevant time period.

AR 15-16. As indicated above, Plaintiff asserts that the ALJ improperly rejected Dr. Izzi's opinion. The Court disagrees.

Here, the ALJ assigned greater weight to the opinions of the non-examining state agency physicians, both of whom opined that Plaintiff did not have a severe mental impairment. AR 16, 82-83, 129-31. "An ALJ may reject the testimony of an examining, but non-treating physician, in favor

of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Lester*, 81 F.3d at 831 (citation omitted). The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to discount Dr. Izzi's opinion in favor of the state agency consultants.

First, the ALJ discounted Dr. Izzi's opinion because his functional assessment conflicted with his own objective findings on mental status examination and his assessed GAF. AR 15-16. An ALJ may properly reject an examining psychologist's functional assessment that conflicts with his own assessment and testing results. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (upholding ALJ's decision to reject examining psychologist's functional assessment that conflicted with his own written report and test results); *Matney*, 981 F.2d at 1019 (ALJ not required to accept an opinion of a physician if it is conclusory and not supported by clinical findings).

Second, the ALJ discounted Dr. Izzi's opinion because Plaintiff received no specialized mental health treatment, psychiatric hospitalizations, or suicidal attempts during the relevant period, and because the state agency physicians' opinions were consistent with the record as a whole. AR 16. This is a specific and legitimate reason to reject Dr. Izzi's functional limitations. *See*, *e.g., Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) (affirming rejection of allegations of mental-functioning limitations based on minimal treatment history); *Velis v. Berryhill*, No. CV 16-006691-RAO, 2017 WL 3247642, at *2 (C.D. Cal. Jul. 31, 201) (ALJ properly discounted examining physician's opinion that was in conflict with substantial evidence in the record, which revealed no psychologically-related limitations and no mental health treatment); *Hyde v. Colvin*, No. 1:12-cv-877 BAM, 2013 WL 5278940, at *5 (E.D. Cal. Sept. 18, 2013) (noting that ALJ's finding that claimant lacked any mental health treatment history sufficient reason to reject opinion of examining physician).

<u>Dr. Prince's Opinion</u>

On April 24, 2013, Dr. Prince completed a psychiatric evaluation of Plaintiff. On mental status examination, Plaintiff's attitude was guarded, her motor activity was agitated and her eye contact was poor. Her thought processes were linear and content unremarkable. Her mood was described as anxious, but her affect was appropriate and she was alert and oriented. Her abstract thinking and insight were fair, but her judgment was poor. Dr. Prince diagnosed Plaintiff with PTSD due to a

childhood trauma and alcohol dependence in early full remission. Dr. Prince opined that Plaintiff's degree of mental health function appeared moderately impaired, but believed that mental health treatment could improve her overall functioning. Dr. Prince further opined that Plaintiff could perform one or two simple repetitive tasks and was not impaired in her ability to perform more complex tasks. She was mildly impaired in her ability to accept instructions from supervisors and interact with coworkers and the public due to elevated anxiety in social situations. She was not impaired in her ability to maintain regular attendance or complete a normal workday/workweek. However, she was moderately impaired to deal with the usual stress encountered in a competitive workplace due to low frustration tolerance. AR 452-56.

In assessing Dr. Prince's opinion, the ALJ reasoned as follows:

> I also give little weight to the opinion of consultative examiner William Prince, Ph.D. [ ]. Dr. Prince opined the claimant would be moderately impaired in dealing with the usual stress encountered in a competitive workplace, due to low frustration tolerance. This finding is inconsistent with the record as a whole, as the lack of specialized mental health treatment or mental symptoms articulated to treating physicians is not consistent with more than mild limitations.

AR 16. Plaintiff argues that the ALJ improperly rejected Dr. Prince's opinion based on lack of treatment. (Doc. No. 13 at p. 9.) However, as with Dr. Izzi's opinion, the ALJ properly rejected Dr. Prince's opinion not only because Plaintiff received no specialized mental health treatment, but also because the opinion was not consistent with the record as a whole. *See, e.g., Burch*, 400 F.3d at 681; *Velis*, 2017 WL 3247642 at *2; *Hyde*, 2013 WL 5278940 at *5.

For the reasons stated, the Court finds that the ALJ did not commit reversible error in evaluating the opinions of Drs. Izzi and Prince regarding Plaintiff's mental health limitations. However, even if the ALJ improperly rejected Plaintiff's moderate mental health limitations, any such error is harmless. An ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination. *Molina v. Astrue*, 674 F.3d 1104, 115 (9th Cir. 2012) (courts "look at the record as a whole to determine whether the error alters the outcome of the case"). Here, both Dr. Izzi and Dr. Prince indicated that Plaintiff could perform simple tasks notwithstanding any mild/moderate limitations in her mental or social functioning (AR 419, 455), and the VE expressly testified that an

individual with Plaintiff's RFC who was also "limited to simple routine tasks, commensurate with an SVP level of 2 or less" could still perform the cleaner job. AR 67-68. A restriction to simple, repetitive tasks amply accounts for any moderate/mild limitations in mental or social functioning. *See*, *e.g.*, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (finding ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated medical-opinion evidence that the claimant had a moderate limitation in pace and other mental limitations regarding attention, concentration, and adaption); *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed.Appx. 15 (9th Cir. 2012) (holding that an RFC for simple routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, adequately accounted for such limitations); *see also Messerli v. Berryhill*, No. 1:16-cv-00800-SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017 (finding limitation to "simple repetitive tasks" accounted for moderate limitations in claimant's ability accept instructions from supervisors and interact appropriately with coworkers and the public, moderate limitations in claimant's ability to maintain work attendance and to complete a normal workday and workweek without interruptions from psychological problems, mild to moderate limitations in the claimant's ability to perform work activities on a consistent basis without special or additional instruction, and moderate to serious limitations in her ability to deal with the usual stress encountered in a competitive workplace); *Henry v. Colvin*, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (finding restriction to simple tasks encompassed claimant's moderate limitations in dealing with changes, social interaction, and low stress tolerance); *Keller v. Colvin*, No. 2:13–cv–0221 CKD, 2014 WL 130493, at *3 (E.D. Cal. Jan. 13, 2014) (finding the ALJ "appropriately captured" a physician's opinion that the plaintiff required "low stress settings" by limiting the plaintiff to simple, repetitive tasks "equating to unskilled work"); *Langford v. Astrue*, No. CIV S-07-0366 EFB, 2008 WL 2073951, at *7 (E.D. Cal. May 14, 2008) (finding that "unskilled work ... accommodated [the claimant's] need for 'limited contact with others. . . .'"). In light of the VE's testimony that an individual limited to simple routine tasks could perform the cleaner position, any failure by the ALJ to include moderate mental or social limitations in the RFC would not materially change the outcome of this case.

///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Terina May Menges.

IT IS SO ORDERED.

Dated: **March 29, 2018**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE